In the Missouri Court of Appeals
 Eastern District
 DIVISION FOUR

BASSAM KHALIL, )
 )
and ) Nos. ED108660 and ED108659
 )
B-CO, LLC, ) Appeal from the Circuit Court
 ) of St. Louis County
 Respondents/Cross-Appellants, ) Cause No. 16SL-CC04079
 )
v. ) Honorable Ellen H. Ribaudo
 )
3HB CORPORATION D/B/A )
HALE COMMUNICATIONS, ) Filed: March 16, 2021
 )
Appellant/Cross-Respondent. )

 Introduction

 3HB Corporation d/b/a Hale Communications (3HB) appeals the judgment of the

trial court, consisting of an award of damages and a declaratory judgment in favor of

Bassam Khalil (Khalil) and B-CO, LLC (B-CO) (collectively, Respondents), after a jury

found in favor of Respondents on their claim for breach of contract. 3HB argues the trial

court erred in granting judgment because Respondents failed to make a submissible case

for either breach of contract or declaratory judgment, the suit was barred by the statute of

frauds, and the trial court gave improper instructions to the jury. Respondents cross-appeal,

arguing that the trial court’s declaratory judgment failed to correctly declare the rights of
the parties under the contract, and that the trial court erred in its calculations of prejudgment

interest. We affirm in part and reverse and remand in part.

 Background

 3HB is a broker of telecommunications and internet services, which matches

customers with various providers of these services, in exchange for a commission the

providers then pay to 3HB. Khalil, both individually and through his company, B-CO,

markets and sells telecommunications and internet services. Khalil, and later B-CO,

worked as a referral agent for 3HB, identifying customers that 3HB could match with a

provider. In exchange, 3HB paid Khalil and B-CO a portion of the commissions 3HB

received from the providers.

 This business relationship began in 2006 between 3HB and Khalil, with an oral

agreement for Khalil to receive 65 percent of 3HB’s commissions from providers for each

referred customer for as long as the referred customer remained 3HB’s customer. In 2008,

3HB and Khalil agreed to reduce Khalil’s commissions to 50 percent. Khalil testified that

the majority of his commissions were 50 percent, but there were some instances in which

he would receive a commission that was less than 50 percent. For example, if someone

else referred a customer to Khalil who he then referred to 3HB, Khalil would split his 50

percent commission with that person and receive only 25 percent himself. Additionally,

Khalil testified that on occasion he referred other referral agents to 3HB, and 3HB would

give him a one-percent commission for those referrals.

 In May of 2015, Khalil formed B-CO in order to handle his referral business

through a company, rather than as an individual. Beginning in June or July of 2015, B-CO

handled all referrals to 3HB and received commissions from 3HB according to 3HB’s prior

 2
agreement with Khalil. 3HB agreed to substitute B-CO for Khalil in their business

agreement.

 In August of 2016, 3HB proposed a new written agreement to Khalil, which Khalil

did not accept. Khalil testified that the proposed agreement contemplated him doing more

work for less money. Khalil testified that 3HB stopped paying all commissions in

September of 2016, and Khalil ceased making referrals to 3HB thereafter. On October 14,

2016, Khalil sent a letter through his attorney seeking payment of commissions.

 On November 4, 2016, Respondents filed a petition against 3HB for breach of

contract, unjust enrichment, quantum meruit, and declaratory judgment. The trial court

held a jury trial in April of 2019, and Respondents elected to proceed on only their claim

of breach of contract. The parties agreed that the trial court would dispose of Respondents’

request for declaratory judgment after trial, and that the trial court would determine an

appropriate award of prejudgment interest, if any. Respondents presented evidence to the

jury regarding past-due commissions, requesting $367,610.48 in damages to Khalil, and

$49,560.99 to B-CO. The jury found in favor of Respondents, awarding $220,560.12 to

Khalil, and the full requested amount of $49,560.99 to B-CO.

 The trial court entered an award of damages consistent with the jury’s verdict. The

trial court also awarded Respondents prejudgment interest calculated at nine percent per

annum from the date Respondents filed their petition. The trial court further entered

declaratory judgment in favor of Respondents, finding that “the jury expressly found that

an agreement existed between each respective Plaintiff and [3HB] whereby [3HB] was

contractually obligated to pay commissions to the respective Plaintiff while [3HB] was

receiving commissions from customers referred by either Plaintiff.” However, the court

 3
was unable to determine from the general verdict which specific commissions 3HB was

obligated to pay, and thus “d[id] not have sufficient evidence to order the ongoing

contractual payments with particularity.”

 Respondents filed a motion to amend the judgment, requesting greater specificity

regarding future commissions. Respondents further moved to amend the award of

prejudgment interest. The trial court agreed the interest calculations were incorrect and

amended the judgment only with respect to the amount of prejudgment interest. This

appeal and cross-appeal follow.

 Discussion

 3HB disputes all aspects of the trial court’s judgment: the award of damages for

breach of contract, the award of prejudgment interest, and the declaratory judgment.

Regarding breach of contract, 3HB argues in Point II that Respondents failed to make a

submissible case of breach of contract in that they failed to present sufficient evidence of

their damages, a necessary element of their cause of action. In Point IV, 3HB argues that

the trial court erred in entering judgment because the oral contract between 3HB and

Respondents is unenforceable in that it violates the statute of frauds. In Point V, 3HB

argues that the trial court erred in entering judgment upon the jury’s verdict because the

trial court gave improper instructions that misled the jury. Regarding the declaratory

judgment, 3HB argues in Point I that the trial court erred in entering such judgment because

Respondents failed to make a submissible case for declaratory judgment in that they failed

to prove they lacked an adequate remedy at law, had a justiciable controversy, and that

their case was ripe for judicial determination. Finally, regarding the award of prejudgment

interest, 3HB argues in Point III that prejudgment interest was not appropriate because the

 4
parties did not agree to such an award, the amount owed was not liquidated, and

Respondents made no definite demand for payment until trial.

 Respondents’ cross-appeal addresses only the trial court’s declaratory judgment

and award of prejudgment interest. In Point I, they argue that the trial court did not

correctly declare and calculate the terms of the agreement between the parties and the

commission payments due. In Point II, they argue that the trial court’s amended judgment

inaccurately calculated the amount of prejudgment interest due. We address each aspect

of the trial court’s judgment, along with each party’s associated arguments, in turn.

 Breach of Contract

 1. Statute of Frauds

 In Point IV, 3HB raises a threshold argument that the oral contract between 3HB

and Respondents is unenforceable because it violates the statute of frauds in that it

contemplates multi-year contracts between the parties. We disagree.

 3HB properly raised this issue as an affirmative defense. Section 432.010 1 requires

“any agreement that is not to be performed within one year from the making thereof” to be

in writing in order to be enforceable. However, “Missouri law is clear that the statute of

frauds defense is inapplicable if the agreement was capable of being performed within one

year.” Bailey v. Hawthorn Bank, 382 S.W.3d 84, 98 (Mo. App. W.D. 2012) (quoting

Adams v. One Park Place Investors, LLC, 315 S.W.3d 742, 748 (Mo. App. W.D. 2010))

(internal quotations omitted). “Our cases, hold, consistently, that a contract is not

unenforceable under the statute of frauds if it could possibly be performed in compliance

with its terms within one year, even though the actual performance is expected to continue

1
 All statutory references are to RSMo. 2000 unless otherwise indicated.

 5
over a much longer period.” Crabb v. Mid-Am. Dairymen, Inc., 735 S.W.2d 714, 716 (Mo.

banc 1987).

 Here, while the evidence at trial did reflect several accounts wherein commissions

continued over the course of several years, there was also testimony that there was no

guarantee how long the customers would continue their services with the providers, and

that customers could terminate their services at any time. Therefore, even though the

parties expected each commission arrangement to last longer than one year, each was

capable of being performed within one year. Accordingly, the statute of frauds does not

render the oral agreement for commissions here unenforceable. Point denied.

 2. Evidence of Damages

 In Point II, 3HB argues that the trial court erred in denying 3HB’s motion for

judgment notwithstanding the verdict (JNOV) because Respondents failed to make a

submissible case for breach of contract in that they failed to present sufficient evidence of

their damages. We disagree.

 In reviewing the denial of 3HB’s motion for JNOV, we must determine whether

Respondents presented a submissible case by offering evidence to support every element

of their claim for breach of contract. See Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d

81, 95 (Mo. banc 2010). We view the evidence in the light most favorable to the jury’s

verdict and give Respondents the benefit of all reasonable inferences, disregarding all

conflicting evidence and inferences. See id.

 In order to make a submissible claim for breach of contract, Respondents had to

present evidence supporting the following elements: (1) the existence of a contract that

includes certain rights and obligations between the parties, (2) that 3HB breached their

 6
obligation under the contract, and (3) that the breach damaged Respondents. See D.R.

Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co., 316 S.W.3d 899, 904 (Mo. banc 2010).

At issue here is the element of damages. “To recover lost profits stemming from a beach

of contract, a plaintiff need only prove the fact of damages with reasonable certainty and

provide an adequate basis for the jury to estimate the lost profits with reasonable certainty.”

Midwest Coal, LLC ex rel. Stanton v. Cabanas, 378 S.W.3d 367, 371 (Mo. App. E.D. 2012)

(citing Ameristar Jet Charter, Inc. v. Dodson Int’l Parts, Inc., 155 S.W.3d 50, 54-55 (Mo.

banc 2005)).

 We find Respondents presented substantial evidence of damages to support a

submissible case for breach of contract here. Respondents offered three exhibits addressing

damages. Exhibit 2 consisted of general reports prepared by 3HB listing all commissions

3HB received from providers, both for customers Respondents referred to 3HB and for

others. Khalil testified that he was not seeking to recover commissions for customers that

he did not refer to 3HB. Exhibit 1 contained commission reports specifically related to

Respondents, listing both net commissions 3HB received as well as the commissions 3HB

then paid Respondents. Khalil testified that Exhibit 1 did not include some customers that

he referred to 3HB, and it did not include any bonuses or incentive payments that some

providers offered. Exhibit 1 also only listed commissions through September of 2016.

Finally, Exhibit 3 was a spreadsheet Khalil prepared by going through the commission

reports in Exhibits 1 and 2 and calculating the total amount due as of February of 2019.

Exhibit 3 contained the specific totals that Respondents requested for damages:

$367,600.20 to Khalil and $49,560.99 to B-CO. Viewing the evidence in the light most

favorable to Respondents, these exhibits constituted substantial evidence of Respondents’

 7
claimed damages and were an adequate basis from which the jury could estimate lost

profits with reasonable certainty. See id. Point denied.

 3. Instructions 6 and 7

3HB argues in Point V that the trial court erred in submitting Instructions 6 and 7, which

read as follows:

 Instruction 6

 If you find in favor of Plaintiff Bassam Khalil, then you must
 award him such sum as you believe he and [3HB] agreed upon
 as a commission.

 Instruction 7

 If you find in favor of Plaintiff B-CO, LLC, then you must award
 it such sum as you believe it and [3HB] agreed upon as a
 commission.

3HB argues these instructions were inappropriate because they were based on Missouri

Approved Instruction (MAI) 4.05 for use when there is an agreed upon percentage of

commission, rather than MAI 4.06 2 for use when there is no agreed upon percentage. 3HB

failed to preserve this point for review.

 Rule 70.03 requires “specific objections to instructions considered erroneous.”

Further, “[n]o party may assign as error the giving or failure to give instructions unless that

party objects thereto on the record during the instructions conference, stating distinctly the

matter objected to and the ground of the objection.” Rule 70.03, Mo. R. Civ. P. 2019. At

trial, 3HB objected to instructions 6, 8, and Verdict Form A on the basis that “the evidence

demonstrates that Mr. Khalil has fully assigned any and all right to payments to his

company, [B-CO], and therefore separate instructions as to these plaintiffs should not be

2
 MAI 4.06 states, “If you find in favor of plaintiff, you must award plaintiff such sum as you believe is a fair
and just commission.”

 8
permitted.” The trial court denied this objection. Because 3HB failed to raise the specific

objection that they now raise on appeal, 3HB’s argument is not preserved for review. See

Howard v. City of Kan. City, 332 S.W.3d 772, 790 (Mo. banc 2011) (declining to review

claim of instructional error where party failed to object to instruction at trial or make any

objection to trial court’s refusal to give party’s proffered alternative instruction). Point

denied.

 Declaratory Judgment

 Both parties contest the adequacy of the trial court’s declaratory judgment, so we

discuss their arguments together. In 3HB’s Point I, 3HB argues that Respondents failed to

make a submissible case for declaratory judgment because they did not establish that they

had a justiciable controversy, that it was ripe for judicial determination, and that they did

not have an adequate remedy at law. We disagree. In Point I of Respondents’ cross-appeal,

they argue that the trial court’s declaratory judgment is inadequate in that it fails to

correctly declare and calculate the payments due based on the evidence presented to the

jury. We disagree in part.

 “The standard of review in a declaratory judgment case is the same as in any court-

tried case.” City of Kan. City, Mo. v. Chastain, 420 S.W.3d 550, 554 (Mo. banc 2014).

We will affirm the judgment of the trial court “unless there is no substantial evidence to

support it, it is against the weight of the evidence, or it erroneously declares or applies the

law.” Id.

 In their petition for declaratory judgment, Respondents asked the trial court to

declare the terms of the contract between the parties and to order 3HB to comply with their

obligations under the contract. The parties agreed that the jury would first determine any

 9
liability related to Respondents’ breach of contract claim, and then the trial court would

determine whether declaratory judgment was appropriate in light of the jury’s findings.

After the jury returned verdicts for damages in favor of Respondents, the trial court entered

the following finding:

 In finding in favor of [Respondents], the jury expressly found
 that an agreement existed between each respective [Respondent]
 and [3HB] whereby [3HB] was contractually obligated to pay
 commissions to the respective [Respondent] while [3HB] was
 receiving commissions from customers referred by either
 [Respondent].

The court went on to declare that “a valid and enforceable contract exists between [each

Respondent] and 3HB,” and that “3HB . . . is contractually obligated to pay [each

Respondent] commissions pursuant to the contractual obligation found by the jury . . . on

a monthly basis, for as long as 3HB . . . receives commissions.”

 However, the jury’s general verdict related to damages did not delineate the

particular customer accounts, and corresponding commission percentage, for which the

jury found 3HB obligated to pay each Respondent. As such, the court was unable to order

a specific amount of future commissions:

 The court is unable to determine which commissions the jury
 found [3HB] to be contractually obligated for although it is clear
 that the jury found [3HB] to be contractually obligated for
 certain commissions. As such this court does not have sufficient
 evidence to order the ongoing contractual payments with
 particularity.

Thus, the trial court entered only a generalized declaratory judgment, declaring the

existence of a contract for future commissions to each Respondent for as long as the

accounts governed by the contract produced commissions for 3HB.

 10
 First, regarding the submissibility of Respondents’ case for declaratory judgment,

we note that “the trial court is afforded wide discretion in administering the provisions of

the declaratory judgment act.” Payne v. Cunningham, 549 S.W.3d 43, 47 (Mo. App. E.D.

2018) (discussing Section 527.010; citing Schaefer v. Koster, 342 S.W.3d 299, 300 (Mo.

banc 2011)). Declaratory judgment is appropriate where a party presents: (1) a justiciable

controversy; (2) legally protectable interests; (3) a controversy ripe for judicial

determination; and (4) an inadequate remedy at law. Id. (citing Century Motor Corp. v.

FCA US LLC, 477 S.W.3d 89, 95 (Mo. App. E.D. 2015)). 3HB does not dispute the

existence of legally protectable interests, but contests the other three elements here.

 3HB argues Respondents essentially asked the trial court to declare that 3HB

breached the contract, for which Respondents had an adequate remedy at law. See

Cincinnati Cas. Co. v. GFS Balloons, 168 S.W.3d 523, 525 (Mo. App. E.D. 2005) (“A

petition seeking declaratory judgment that alleges breach of duties and obligations under

the terms of a contract and asks the court to declare those terms breached is nothing more

than a petition claiming breach of contract”). However, while Respondents did pursue a

legal remedy through its breach of contract claim, this remedy only addressed any past

breach of the contract up until the time of trial.

 In contrast, the declaratory judgment claim asked the court to specify the terms of

the contract and to declare payments that would be due going forward. Indeed, such

determinations are squarely within the scope of declaratory judgment: “Any person . . .

whose rights, status or other legal relations are affected by a . . . contract . . ., may have

determined any question of construction or validity arising under the . . . contract . . . and

obtain a declaration of rights, status or other legal relations thereunder.” Section 527.020.

 11
Furthermore, “[a] contract may be construed either before or after there has been a breach

thereof.” Section 527.030. Declaratory judgment was appropriate here because while the

jury could determine the existence of a past breach of contract and any damages due on

Respondents’ breach of contract claim, the jury could not declare the rights of the parties

going forward. Thus, Respondents had no adequate remedy at law.

 Additionally, 3HB argues Respondents failed to present a justiciable controversy

that was ripe for judicial determination because the trial court’s judgment was not able to

put the controversy to rest. “In the context of a declaratory judgment action, a justiciable

controversy exists where the plaintiff has a legally protectible interest at stake, a substantial

controversy exists between parties with genuinely adverse interests, and that controversy

is ripe for judicial determination.” Mercy Hosps. E. Cmtys. v. Mo. Health Facilities

Review Comm’n, 362 S.W.3d 415, 417 (Mo. banc 2012) quoted in Century Motor Corp.,

477 S.W.3d at 95 n.4 (noting Missouri Supreme Court has recognized ripeness as a sub-

element of justiciability). “A justiciable controversy is a real, substantial, presently

existing controversy admitting of specific relief, as distinguished from an advisory decree

upon a purely hypothetical situation.” Century Motor Corp., 477 S.W.3d at 95 (quoting

Mo. Soybean Ass’n v. Mo. Clean Water Comm’n, 102 S.W.3d 10, 25 (Mo. banc 2003)).

 Here, Respondents presented a justiciable controversy in that they asked the trial

court to define the terms of their present agreement with 3HB, based on the factual findings

of the jury. The nature of the contract was that it continued for the duration of each

respective customer’s account, and one of the questions presented was whether 3HB had

continuing liability to pay commissions under the contract based on the accounts that had

already been established. This issue was not hypothetical, and the jury determined the facts

 12
necessary to resolve it by expressly finding that 3HB was contractually obligated to make

ongoing commission payments to Respondents for the duration of the accounts referred

by Respondents. Thus, the controversy was both justiciable and ripe for judicial

determination.

 However, neither party asked the jury to specify the particular accounts for which

they found 3HB liable for commissions. Respondents submitted only a general verdict

form, and 3HB made no objection. Section 510.230 states, “In every issue for the

recovery of money only, . . . the jury shall render a general verdict.” In contrast,

“[w]here several counts upon several distinct transactions or causes of action are joined

in the same suit, a separate finding on each count should be made.” Kan. City Power &

Light Co. v. Bibb & Assocs., Inc., 197 S.W.3d 147, 155 (Mo. App. W.D. 2006) (citing

cases). Here, there was only one count of breach of contract covering several distinct

transactions. Respondents were not required to submit a special verdict form, but it

would have been permissible and advisable here given the request for declaratory

judgment.

 The failure to obtain a detailed breakdown of the jury’s findings does not

remove the justiciability or ripeness of the controversy, but it does mean that the

trial court’s declaratory judgment was necessarily limited to what it could determine

based on the facts found by the jury. While the resulting likelihood of further

litigation to resolve disagreements between the parties regarding which accounts

require ongoing payments is unfortunate, we do not find the trial court acted outside the

bounds of its discretion under the declaratory judgment act in entering a judgment

declaring at least the fact that a contract existed for ongoing payments for the duration of

the relevant accounts. 3HB’s Point I is denied.
 13
 Accordingly, we do not agree with Respondents’ argument that we can calculate

damages going forward from the general verdict because the evidence at trial supported a

particular breakdown of applicable accounts and corresponding commissions. Juries have

the right to believe or disbelieve any evidence, even where such evidence is uncontradicted.

See River City Dev., Assocs., LLC v. Accurate Disbursing Co., LLC, 345 S.W.3d 867,

872-73 (Mo. App. E.D. 2011) (“Where a party bears the burden of proof, it is within the

jury’s prerogative to find against that party, even if that party’s evidence is uncontradicted

and unimpeached”). Moreover, “a court may not speculate as to what the jury meant[;]

the parties are entitled to the unconditional judgment of the jury rather than the court’s

interpretation of its findings.” Northrup Grumman Guidance and Elecs. Co. v. Employers

Ins. Co. of Wausau, 612 S.W.3d 1, 19 (Mo. App. W.D. 2020) (quoting Kan. City Power &

Light Co., 197 S.W.3d at 155) (internal alterations omitted).

 Respondents set out detailed summaries of the evidence in their brief, arguing that

specific calculations of commission payments going forward are possible based on the

evidence the jury considered. However, our focus is not on the evidence considered by the

jury, but on the jury’s verdict. Examining the verdict alone, we cannot conclude with

certainty what calculations the jury undertook to arrive at its award of damages. Thus, we

do not find that the trial court erred in declining to interpret the jury’s verdict and assign

specific percentages to specific accounts going forward. 3 The trial court’s judgment was

3
 We note Respondents’ argument that at least as it relates to B-CO, the jury awarded the exact amount of
damages requested by B-CO, which was consistent with the detailed list of clients and commissions presented
as evidence of B-CO’s damages. However, we nevertheless cannot find the trial court erred in concluding it
could not assume the jury’s calculations were identical to B-CO’s. See Northrup, 612 S.W.3d at 19 (holding
trial court did not err in refusing to interpret jury’s damage award, which was same amount as line item
requesting attorney’s fees, as finding that liability was limited to past legal fees).

 14
consistent with the verdict here and did not erroneously declare or apply the law in this

respect. See Chastain, 420 S.W.3d at 554. Respondents’ Point I is denied in part.

 However, we agree with Respondents that the declaratory judgment’s effective date

is not supported by substantial evidence and is against the weight of the evidence. The

evidence at trial consisted of commissions calculations through the end of February 2019,

and the jury chose on which of those past due accounts and for how much of each to award

damages. The jury had no evidence of what accounts were active beginning March 1,

2019, and they made no determination regarding damages from that date forward, besides

finding that the contract obligated 3HB to pay ongoing commissions for the duration of

any accounts referred by Respondents. Thus, the trial court’s declaratory judgment,

ordering 3HB to pay ongoing commissions as required by the contract, should be effective

beginning March 1, 2019. We grant Respondents’ Point I in this respect.

 Prejudgment Interest

 3HB argues in Point III that the trial court erred in granting Respondents

prejudgment interest because they were not entitled to prejudgment interest under Section

408.020, and the parties did not agree to an award of prejudgment interest. Respondents

argue in Point II of their cross-appeal that the trial court miscalculated the amount of

prejudgment interest in its award. We discuss these final points together.

 We review a trial court’s determination of the right to prejudgment interest de novo

“because it is primarily a question of statutory interpretation and its application to

undisputed facts.” Assurance Gen. Contracting, LLC v. Ekramuddin, 604 S.W.3d 761, 771

(Mo. App. E.D. 2020). Here, there was no agreement between the parties regarding

prejudgment interest, thus we must determine whether Respondents were entitled to

 15
prejudgment interest under Section 408.020. See id. at 772 (“prejudgment interest is based

on either statute or contract”). “The purpose of statutory prejudgment interest is to promote

settlement of lawsuits and fully compensate plaintiffs by accounting for the time value of

money.” Id. (citing Hopkins v. Am. Econ. Ins. Co., 896 S.W.2d 933, 945 (Mo. App. W.D.

1995)). “Awards of prejudgment interest are not discretionary; if the statute applies, the

trial court must award prejudgment interest.” Id. However, a court “may also consider

equitable principles of fairness and justice when awarding prejudgment interest.” Id.

(citing Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. banc 1987)).

 Section 408.020 provides for prejudgment interest at a rate of nine percent per

annum on claims where debts are liquidated and the creditor has made a demand for

payment. Nusbaum v. City of Kan. City, 100 S.W.3d 101, 109 (Mo. banc 2003).

“Although the demand need be in no certain form, it must be definite as to amount and

time.” Id. If a party fails to make an adequate demand for payment prior to filing suit, the

lawsuit itself can constitute the demand where the petition pleads facts sufficient to support

an award of prejudgment interest. Watters v. Travel Guard Intern., 136 S.W.3d 100 (Mo.

App. E.D. 2004) (filing of lawsuit can constitute demand); Chambers by Abel v. Rice, 858

S.W.2d 230, 231-32 (Mo. App. S.D. 1993) (petition must plead facts to support award of

prejudgment interest). Additionally, liquidated debts are either fixed or are “readily

ascertainable by computation or recognized standards.” Children Intern. v. Ammon

Painting Co., 215 S.W.3d 194, 203 (Mo. App. W.D. 2006).

 The trial court awarded Respondents prejudgment interest from the date Khalil filed

his original petition 4: November 4, 2016. 3HB argues that Respondents failed to make an

4
 Khalil amended his petition on May 15, 2017, adding B-CO as a plaintiff.

 16
adequate demand for payment even in their petition and that the damages were

unliquidated. Conversely, Respondents argue that prejudgment interest actually began to

accrue on October 14, 2016, the date that Khalil’s attorney sent a letter to 3HB’s

attorney demanding payment. Respondents further argue that damages were readily

ascertainable by 3HB given the terms of the parties’ agreement.

 The October 14, 2016 letter from Khalil’s attorney states the following, in relevant

part:

 Despite demand, your client has failed and refused to pay my
 client the commissions to which he is entitled.

 Accordingly, please see the attached Petition that will be filed
 on Friday, October 20, 2016 in the event my client is not
 furnished with the statements referenced in my September 30,
 2016 correspondence and paid all commissions to which he is
 entitled before that date.

The attached petition alleged that Khalil and 3HB had a contract under which 3HB agreed

to pay Khalil fifty percent of all commissions for customers referred by Khalil, as long as

such customers had active accounts with 3HB, whether or not Khalil remained an

independent contractor with 3HB. The petition’s breach of contract claim alleged that 3HB

breached the contract “by failing and refusing to pay Khalil the commissions to which he

is entitled.”

 We find that this letter constitutes a sufficient demand for payment of commissions,

and that the damages at issue were liquidated. The letter and attached petition notified

3HB of Respondents’ contention that commissions remained due regardless of whether

Khalil continued to work as a referral agent for 3HB, and the petition specified the

commission percentage. 3HB was capable of calculating the amount requested given that

3HB managed the relevant accounts and had been paying commissions to Respondents

 17
prior to the cessation of the parties’ business relationship. See Chouteau Auto Mart, Inc.

v. First Bank of Mo., 148 S.W.3d 17, 27-28 (Mo. App. W.D. 2004) (petition stating

damages consisted of all moneys drawn on one account and deposited into another

constituted sufficient demand because bank records revealed exact amount of damages and

were within defendant bank’s possession); see also Scott v. King, 510 S.W.3d 887, 894-95

(Mo. App. E.D. 2017) (damages were liquidated where parties agreed to monthly rental

amount and court was able to multiply rent by number of months tenant occupied property

without paying rent). The letter with the attached petition demanded payment on or before

October 20, 2016. We find this letter sufficiently definite to constitute a demand for

payment of a liquidated debt to Respondents 5 under Section 408.020. Accordingly,

prejudgment interest should commence on October 14, 2016. 3HB’s Point III is denied,

and Respondents’ Point II is granted in part. 6

 Conclusion

 We find that the trial court properly entered judgment upon the jury’s verdict on

Respondents’ claim of breach of contract. Respondents presented a submissible case, the

contract does not violate the statute of frauds in that it is capable of performance within

5
 We note that Khalil’s October 14, 2016 letter and initial petition listed only Khalil as plaintiff, and Khalil
later filed an amended petition adding B-CO as an additional plaintiff. The trial court granted prejudgment
interest to both parties as of the filing date of the original petition. We agree with the trial court that it is
appropriate and equitable in this instance to treat the parties together, given that B-CO is simply the company
name for Khalil, and Khalil remained the referral agent for 3HB, acting under their agreement at all relevant
times. Khalil substituted B-CO for himself in name only. This is not a case where prejudgment interest
should commence with a later amended petition which added a party or claim that the defendant would be
unaware of prior to the amendment. Cf. Wheelbarger v. Landing Council of Co-Owners, 471 S.W.3d 875,
892-93 (Tex, App. 2015) (email from nonplaintiff to subsequent board member who was not on board during
relevant time did not trigger accrual of prejudgment interest); Mossman v. Amana Soc’y, 494 N.W.2d 676,
678 (Iowa 1993) (noting assessment of prejudgment interest should run from date defendant became third
party to lawsuit rather than later date that petition amended to name defendant). Equitable principles here
support an award of prejudgment interest to Respondents together as of the date of Khalil’s demand letter.
6
 We note Respondents’ contention that the previous interest calculations were incorrect regardless of
effective date. In light of our decision here, we leave it to the trial court on remand to consider the evidence
and order the correct amount of interest.

 18
one year. Additionally, Respondents presented a submissible case for declaratory

judgment, and the trial court did not err in entering such judgment to the extent it was able

from the jury’s verdict. However, the effective date of the judgment was unsupported by

evidence and against the weight of the evidence. The jury’s verdict addressed damages

through the end of February, 2019, and thus the declaratory judgment should commence

on March 1, 2019. Finally, the trial court did not err in awarding prejudgment interest

under Section 408.020, but the effective date of such interest should be October 14, 2016,

when Khalil made a demand for payment through his attorney.

 Accordingly, we reverse the judgment in part and remand to the trial court with

instructions to modify the declaratory judgment to state an effective date of March 1, 2019.

We further instruct the trial court to recalculate prejudgment interest from October 14,

2016, and modify its award as necessary. In all other respects, we affirm.

 ______________________________
 Gary M. Gaertner, Jr., P.J.

Philip M. Hess, J., and
Michael E. Gardner, J., concur.

 19